### Rose APPLETON, et al.

v.

### DELOITTE & TOUCHE L.L.P.

No. 3:95–0483.

United States District Court,
M.D. Tennessee,
Nashville Division.

July 3, 1996.

---

George Edward Barrett, Nashville, TN, James M. Finberg, Kelly M. Dermody, Jonathan D. Selbin, San Francisco, CA, Susan S. Garner, Robert Joseph Turner, Nashville, TN, for plaintiffs.

Shelby R. Grubbs, Robert C. Divine, Raymond H. Hixson, Jr., Christopher H. Steger, Marcia M. Eason, Chattanooga, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

### I. *INTRODUCTION*

Pending before the Court are the Plaintiffs' Motion for Class Certification (Docket No. 542), the Defendant's Response thereto (Docket No. 798), and several supplemental briefs and supporting exhibits filed by the parties. The Court heard argument on the Motion on May 13, 1996. For the reasons set forth herein, the Court DENIES Plaintiffs' Motion for Class Certification.

Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., as well as 42 U.S.C. § 1981, and various states' statutes, alleging racial discrimination under both disparate impact and disparate treatment theo-

ries. Seven individual Plaintiffs seek certification to prosecute this suit as a class action.[1]

Plaintiff Rose Appleton was employed at the Defendant's office in Stamford, Connecticut, from February 15, 1988 until May 13, 1994, as a Receptionist and Floater Secretary. (First Amended Class Action Complaint at ¶ 22 [hereinafter "Amended Complaint"]). Plaintiff Anne Dickenson worked at the Defendant's Palm Beach, Florida office, from February, 1993 until April, 15, 1994, as a Secretary. (Amended Complaint at ¶ 34). Plaintiff Frederick Liggin worked as a Programmer Trainee, Programmer, and Programmer Analyst, from June 19, 1989 until October 3, 1994, in the Defendant's Hermitage, Tennessee office. (Amended Complaint at ¶ 46). Plaintiff Steven McIntosh applied for the position of Senior Manager in the Management Consulting Department at Defendant's San Francisco office in October, 1994, but was not hired. (Amended Complaint at ¶ 59, 60). Plaintiff Faye Smith is currently employed at Defendant's Hermitage, Tennessee office. (Amended Complaint at ¶ 63). Since she began work on September 9, 1989, she has worked as a Systems Analyst and Senior Systems Analyst. (Id.) Plaintiff Anthony Williams worked as a Facilities Engineer at Defendant's Hermitage, Tennessee office from November 28, 1994 to May 10, 1995. (Amended Complaint at ¶ 72). Plaintiff Kamili Williams worked as a Staff Accountant assigned to the Audit Department at the Defendant's Parsippany, New Jersey office from September 14, 1992 to December 23, 1994. (Amended Complaint at ¶ 80).

Plaintiff McIntosh alleges he was unlawfully denied employment with the Defendant because of his race. (Amended Complaint at ¶¶ 59–61). Plaintiffs Appleton, Dickenson and Liggin claim they were unlawfully denied training opportunities because of their race. (Amended Complaint at ¶¶ 27, 38, 49). Plaintiffs Appleton, Liggin, A. Williams, and K. Williams allege they were unlawfully denied compensation equal to that provided to similarly situated white employees. (Amended Complaint at ¶¶ 28, 52, 75, 84). Plaintiffs Liggin, Smith, A. Williams, and K. Williams allege that they were unlawfully denied promotions because of their race. (Amended Complaint at ¶¶ 51, 66, 75, 83). Plaintiffs Dickenson, Liggin, Smith, K. Williams, and A. Williams allege that they were assigned less desirable work than similarly situated white employees. (Amended Complaint at ¶¶ 40, 49, 67, 74, 85).[2] Plaintiffs Appleton and Dickenson allege that they were unlawfully terminated because of their race. (Amended Complaint at ¶¶ 25, 37). Plaintiffs Liggin, A. Williams, and K. Williams allege they were constructively discharged. (Amended Complaint at ¶¶ 56, 77, 87).

Plaintiffs seek certification of a class consisting of: All African Americans who, between July 17, 1993 and the date of entry of judgment in this action, (a) have been employed, are employed, or will be employed by Deloitte & Touche, LLP, or (b) have applied or will apply for employment with Deloitte & Touche, LLP.

Defendant is a partnership that provides audit and accounting services and tax and management consulting advice to individuals and businesses. Defendant has approximately 17,000 "client service" or "administrative" employees at approximately 45 local offices and 114 locations. Client service employees generally provide professional services to clients, and include accountants, tax consultants and management consultants. Administrative employees provide support within the firm, and include secretaries, data processing employees, and facilities management

1. After the lawsuit was filed, Plaintiff Sharon Yates filed a Notice withdrawing as a proposed class representative. (Docket No. 118).

2. In addition, Plaintiffs Liggin and Smith allege retaliation. (Amended Complaint at ¶¶ 55, 69). Plaintiffs Appleton and Dickenson allege they were unfairly denied the opportunity to change their work schedules. (Amended Complaint at ¶¶ 29, 40). Plaintiffs Appleton and Liggin allege they were subjected to a hostile work environ-

ment. (Amended Complaint at ¶¶ 31, 54). Plaintiff Dickenson alleges unlawful denial of support services. (Amended Complaint at ¶ 39). Plaintiff Smith alleges she was subjected to harassment and hostility because of her race. (Amended Complaint at ¶ 68). Plaintiff A. Williams alleges that Defendant unlawfully failed to provide him with notice of employment opportunities. (Amended Complaint at ¶ 75).

employees. Typically, only client service employees will be offered the opportunity to become one of the owners of the firm. Specialization in each local office generally reflects the needs of the clients in the particular area.

## II. *PLAINTIFFS' ALLEGATIONS*

### A. *Generally*

 Although it may not conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action, the court may probe beyond the allegations of the pleadings to determine whether the requirements of Rule 23 have been met. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996); *Castano v. The American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996). "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano,* 84 F.3d at 744.

Title VII prohibits discrimination by an employer against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). Racial discrimination is also prohibited by 42 U.S.C. § 1981. The Court considers that, at least for purposes of this Motion, claims brought under Section 1981 are governed by the same evidentiary framework applied to Title VII claims. *Patterson v. McLean Credit Union,* 491 U.S. 164, 184–88, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989).

Essentially, Plaintiffs claim that:

"[T]he representative Plaintiffs and all Class members are challenging the legality of Deloitte's uniform personnel system of virtually all-white decisionmakers making all hiring, training, compensation, promotion, evaluation and termination decisions based on subjective criteria ... which results in an adverse impact on African Americans."

(Initial Brief at 1). The theories upon which Plaintiffs rely are disparate impact and disparate treatment.

### B. *Disparate Impact*

 The disparate impact model is used to analyze discrimination claims involving employment practices that are "facially neutral in their treatment of different groups but ... in fact fall more harshly on one group than another and cannot be justified by business necessity." *International Brotherhood of Teamsters v. U.S.,* 431 U.S. 324, 333–36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). To establish a prima facie case of disparate impact, the Plaintiffs must (a) identify a specific employment practice; (b) identify a racial imbalance in the workforce; and (c) show that the specific employment practice is responsible for the statistical disparities. *Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

In *Watson v. Ft. Worth Bank, supra,* the Supreme Court recognized that the disparate impact theory may apply to claims alleging discrimination based on an employer's subjective decisionmaking. The Court made clear, however, that the use of subjective criteria in decisionmaking is not discriminatory per se. *See, e.g., Watson,* 487 U.S. at 989, 108 S.Ct. at 2786. *See also Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1292 (5th Cir.1994).

In *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), the Court again addressed the appropriate analysis in deciding a disparate impact claim based on subjectivity in decisionmaking. In *Wards Cove,* the Court rejected the statistical comparisons used by the circuit court; explained that a plaintiff must show that each employment practice challenged causes a statistical disparity; rejected a strict characterization of the "business necessity" defense; and concluded that the plaintiff bears the burden of persuasion to disprove the existence of a business justification.

Two years later, Congress enacted the Civil Rights Act of 1991 which modified some of the rules announced by the Supreme Court in *Wards Cove.* 42 U.S.C. § 2000e–2(k)(1)(A)–(B)(i). The Act restates and redefines the business necessity defense. 42 U.S.C. § 2000e–k(1)(A)(i). In addition, the

Act provides that the plaintiff "shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." 42 U.S.C. § 2000e–2(k)(1)(B)(i).

The legislative history to the Act explains this provision as follows:

> When a decision-making process includes particular, functionally-integrated practices which are components of the same criterion, standard, method of administration, or test, such as the height and weight requirements designed to measure strength in *Dothard v. Rawlinson,* 433 U.S. 321[, 97 S.Ct. 2720, 53 L.Ed.2d 786] (1977), the particular, functionally-integrated practices may be analyzed as one employment practice.

137 Cong.Rec. S15276 (daily ed. Oct. 25, 1991).

Courts have determined that the Act did not alter the "particularity" aspect of *Wards Cove. See e.g., Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1372 (5th Cir.1992). Consequently, in order to prevail on a disparate impact claim, *Watson* and *Wards Cove* require that the plaintiff show more than just the use of subjective criteria in decisionmaking and statistical disparities in the employer's work force:

> Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.

*Wards Cove,* 490 U.S. at 655, 109 S.Ct. at 2124 (quoting *Watson,* 487 U.S. at 992–95, 108 S.Ct. at 2788–89).

To support their disparate impact claim, Plaintiffs have filed affidavits of two experts who opine that Defendant has a racially imbalanced workforce. The specific employment practice Plaintiffs contend is responsible for the imbalance is the use of subjective decisionmaking in all personnel decisions. Plaintiffs rely on the affidavit of a third expert to show a causal connection between subjective decisionmaking and the racial imbalance. Plaintiffs also offer anecdotal evidence, in the form of affidavits of approximately 100 current and former employees of, and applicants for employment with, the Defendant. Finally, Plaintiffs rely on the documentation and testimony produced during the discovery process.

## C. *Disparate Treatment*

■ A plaintiff generally establishes disparate treatment by showing that the employer intentionally treated him less favorably than similarly-situated white employees because of his race. *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In a class action alleging disparate treatment, however, the class plaintiffs must show that "racial discrimination was the [employer's] standard operating procedure—the regular rather than the unusual practice." *International Brotherhood of Teamsters,* 431 U.S. at 336–38, 97 S.Ct. at 1855. Private class actions and government actions are generally referred to as "pattern-or-practice" suits. 431 U.S. at 357–61, 97 S.Ct. at 1866–67; *Cooper v. Federal Reserve,* 467 U.S. 867, 874–76 n. 9, 104 S.Ct. 2794, 2799 n. 9, 81 L.Ed.2d 718 (1984). The inquiry at the liability stage of a private class action will not focus on individual employment decisions, but rather whether there exists a pattern of discriminatory decisionmaking. *Cooper,* 467 U.S. at 874–76, 104 S.Ct. at 2799–2800.

■ Statistical evidence showing gross disparities in treatment may be used in establishing a prima facie disparate treatment case. *Anderson,* 26 F.3d at 1285; *Wagner v. Taylor,* 836 F.2d 578, 592 (D.C.Cir.1987). If the statistical evidence is insufficient to establish discriminatory intent, the plaintiffs may offer historical, individual, or circumstantial proof. *Anderson,* 26 F.3d at 1285. The employer may then rebut the plaintiffs' prima facie case "by introducing proof that plaintiffs' statistics are inaccurate or insignificant or by providing a non-discriminatory

explanation for the apparently discriminatory result." *Id.*

Plaintiffs seek to show a pattern or practice of discrimination here by relying on evidence showing Defendant's use of subjective criteria in decisionmaking and statistical disparities, as well as portions of the evidence described above.

## III. *REQUIREMENTS OF RULE 23*

### A. *Generally*

The class action device is a procedural mechanism designed to conserve " 'the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.' " *General Telephone Co. v. Falcon*, 457 U.S. 147, 154–56, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 699–701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979)).

The Sixth Circuit recently discussed the appropriate application of Rule 23 in a mass tort action. In *In re American Medical Systems, Inc.*, 75 F.3d at 1079, the court reiterated that the party seeking the class certification bears the burden of proof. In addition, the court explained, the movant must show that all four prerequisites set forth in Subsection (a) of Rule 23 have been met. *Id.* Once those conditions have been satisfied, the movant must also demonstrate that it falls within at least one of the subcategories of Rule 23(b). *Id.*

■ The first requirement of Subsection (a) is that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There is no strict numerical test for making this determination. *In re American Medical Systems, Inc.*, 75 F.3d at 1079. "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *Id.*

Subsection (a)(2) requires the movant to show "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). As the Supreme Court explained in *General Telephone Co. v. Falcon*, 457 U.S. at 154–56, 102 S.Ct.

at 2369, class relief is "particularly appropriate" when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. In those cases, proceeding as a class action saves the resources of the courts and the parties by litigating common issues in one proceeding. *Id.*

■ The typicality requirement, set forth in Subsection (a)(3), requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Commonality and typicality "tend to merge." *Falcon*, 457 U.S. at 156–57, 102 S.Ct. at 2370. The typicality inquiry focuses on whether the named representatives' claims "have the same essential characteristics" as the claims of the proposed class. *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). *See also Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3rd Cir.1996) (no set of representatives can be typical of class which is a "hodge podge" of factually and legally different plaintiffs).

Subsection (a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). As the Sixth Circuit has explained, "[t]his prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *In re American Medical Systems, Inc.*, 75 F.3d at 1083. This requirement raises issues of the adequacy of class counsel and the existence of any conflicts of interest among potential class members. *Id.*

Assuming the requirements of Subsection (a) are met, Plaintiffs seek certification under Rule 23(b)(2), which looks to whether the defendant has acted on grounds generally applicable to the whole class so that injunctive relief as to the whole class would be appropriate; and under Rule 23(b)(3), which looks to whether common questions of law or fact predominate and whether the class action vehicle is superior to other available methods. "Subdivision (b)(3) parallels subdivision (a)(2) in that both require that com-

mon questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.,* 75 F.3d at 1084.

### B. *Across the Board Certification*

■ Defendant argues that Plaintiffs are attempting to bring an "across the board" class action, relying on Footnote 15 of *Falcon,* 457 U.S. at 157–59 n. 15, 102 S.Ct. at 2371 n. 15. Plaintiffs contend that they are not seeking "across the board" certification. Nonetheless, the Court believes it is appropriate to consider every potential argument in favor of class certification.

In *Falcon,* 457 U.S. at 156–59, 102 S.Ct. at 2370–71, the Supreme Court rejected the "across the board" class action rule that had been adopted by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir.1969), which permitted any victim of racial discrimination in employment to attack all employment practices by that employer alleged to be racially discriminatory.

In determining that the plaintiff, a Mexican–American who complained that he was denied a promotion because of his race, could not represent Mexican–American applicants who had not been hired, the Court explained:

> If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation.

457 U.S. at 157–59, 102 S.Ct. at 2371.

The footnote that followed this quote left open the possibility that an across the board attack might be appropriate for cases involving biased testing procedures, or if discrimination manifested itself in more than one employment practice "in the same general fashion, such as through entirely subjective decisionmaking processes." 457 U.S. at 157–59 n. 15, 102 S.Ct. at 2371 n. 15. In these situations, an incumbent employee could represent an applicant member of the class because the commonality and typicality requirements of Rule 23(a) can be satisfied. *Griffin v. Dugger,* 823 F.2d 1476, 1487 (11th Cir.1987). Footnote 15 should not, however, be used to "defeat the general dictates of *Falcon.*" *Id.*

In applying Footnote 15, the courts have required plaintiffs to show that a defendant's decisionmaking process is *entirely* subjective before permitting an across the board attack. For example, in *Vuyanich v. Republic National Bank of Dallas,* 723 F.2d 1195 (5th Cir.1984), the Fifth Circuit held that plaintiffs had not provided sufficient proof to satisfy the exception contained in Footnote 15:

> The district court's finding that the Bank relied on two objective inputs—education and experience—in its necessarily subjective hiring process ... precludes reliance on this 'general policy of discrimination' exception.

723 F.2d at 1200.

Similarly, in *International Union v. LTV Aerospace and Defense Co.,* 136 F.R.D. 113, 122 (N.D.Texas 1991), the court found that the existence of a collective bargaining agreement that governed many of the defendant's decisionmaking processes "establishes that the process was not entirely subjective." By contrast, the court in *Wynn v. Dixieland Food Stores, Inc.,* 125 F.R.D. 696, 701 (M.D.Ala.1989), held that Footnote 15 applied only after finding that "the defendants used one entirely subjective selection system for all selection decisions," and that "the selection process is the same regardless of the type or level of job filled or the status of the person selected whether part-time/full-time, management/non-management, outsider or incumbent."

Although Plaintiffs have shown that the decisionmaking processes used by Defendant contain elements of subjectivity, the Court is not persuaded that those processes are entirely subjective, or that decisionmakers have unfettered discretion. The evidence submitted by the parties indicates that employment decisions at all levels employ various objective factors.

For example, those applying for Audit and Tax positions in the Parsippany, New Jersey

office are generally required to have a 3.0 grade average or higher and at least 24 credit hours in accounting so that they will be able to sit for the CPA exam. (Affidavit of Kenneth Warman at ¶¶ 7–8). Other objective criteria for these positions include work experience, extracurricular activities, and whether the applicant has passed the CPA exam. (Warman Affidavit at ¶ 8).

In evaluating an experienced applicant for a position in managing consulting in the Northern California office, a position sought by Plaintiff Steven McIntosh, Defendant looks to past experience in a relevant industry and work experience. (Affidavit of Mark Norland at ¶ 11).

With respect to promotion of Audit employees, like Plaintiff Kamili Williams, promotion to the second level, Senior, Audit employees generally must have passed the CPA exam, and are required to have held their current position for one to two years. (Affidavit of Michael Sonderby at ¶ 13). Seniors are considered for the next level, Manager, after five years, and Managers are considered for promotion to Senior Manager after three years. (*Id.*) Senior Managers are considered for Partner or Director after several years in that position. (*Id.*)

Salary decisions for Administrative personnel are based on a salary grade system. (Affidavit of Doug Greenleaf at ¶¶ 11, 12; National Exhibit ADM–1). Grades within that system are based on criteria that include educational background and work experience. (National Exhibit ADM–1).

As these examples demonstrate, Defendant's decisionmaking processes are not entirely subjective.

Furthermore, although there is no centralized review of personnel decisionmaking, as discussed later in this Memorandum, personnel decisions are not left to the "unfettered discretion" of local decisionmakers. For example in the Hermitage Office, termination decisions made by the employee's immediate supervisor are reviewed by the head of that office, the Chief Information Officer, as well as the Hermitage Human Resources Office. (Greenleaf Affidavit at ¶ 16). Decisions to terminate employees in most of the local offices are also reviewed by the human resources office. (Affidavit of Bartholomew J. Reid at ¶ 16; Affidavit of Harry P. Hurvitz at ¶ 13).

Accordingly, because the Plaintiffs do not fall within the Footnote 15 exception to the holding in *Falcon,* they must otherwise demonstrate that they are able to satisfy each of the requirements of Rule 23.

## IV. ANALYSIS OF RULE 23(a) REQUIREMENTS

### A. Numerosity

Plaintiffs claim the proposed class consists of thousands of current and former African–American employees of, and applicants for employment with, the Defendant, who are geographically dispersed across the country. The Court finds, and the Defendant does not contest, that the numerosity requirement is satisfied as to the class as proposed.[3]

### B. Commonality

Plaintiffs argue that the factual and legal issues common to the class include: (a) whether Plaintiffs' statistical and anecdotal evidence establish a prima facie case of employment discrimination under either discriminatory impact or discriminatory treatment theories; (b) whether the Defendant employs a subjective decisionmaking process with respect to hiring, evaluations, compensation, promotions, job assignments, training, and terminations; (c) whether that process has an adverse impact upon African Americans; and (d) whether Deloitte can establish that its practices are justified as a "business necessity".[4]

Defendant argues that the statistical proof offered by the Plaintiffs does not unite the

---

**3.** Defendant does argue that the largest group the Court could certify as a class would be a local Office, and in that case, the numerosity requirement would not be satisfied.

**4.** The Court has considered the other factual and legal issues that Plaintiffs argue are common to the class, and finds that they are either addressed in the discussion above or do not merit a separate discussion.

class because it is flawed in several respects. The Court has noted these criticisms and the Plaintiffs' response, but finds it unnecessary to resolve the statistical questions raised in order to rule on class certification.

Assuming that the statistics are entirely valid, however, the Court is not persuaded that their use weighs heavily in favor of commonality. While it is true that the whole class will allege that African Americans are underrepresented throughout the Defendant's workforce, proving that claim through statistics will require a breakdown of every job function for each personnel decision challenged. *Wards Cove*, 490 U.S. at 649–57, 109 S.Ct. at 2121–24; *Anderson*, 26 F.3d at 1283–96. As the Eleventh Circuit stated in *Griffin v. Dugger*, 823 F.2d at 1490 n. 32:

> In light of *Falcon*, 'general statistical evidence of underrepresentation in the workforce will undoubtedly not suffice to justify a single class covering different types of discrimination such as in hiring, promotion, and discharge.'

(quoting 2 A. Larson & L. Larson, *Employment Discrimination* § 49.52(c)(2)(1986)).

Plaintiffs also argue the class is united with respect to proving that the Defendant uses subjective decisionmaking, and in responding to the Defendant's likely defense that the criteria used are "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i).

As noted above and based on the proof that has been submitted, the Court concludes that the Defendant uses both objective and subjective criteria in making employment decisions. The evidence indicates that the objective and subjective criteria used by the Defendant vary according to: (1) the type of decision being made (hiring, promotion, job assignment, etc.); (2) the job type or job level involved (accountant, computer programmer, secretary, etc.);[5] and (3) the particular local office making the decision. In addition, it appears that the level of subjectivity increases the higher the position of the employee.

For example, when considering an applicant for an accounting position in the Parsippany office, as noted above, the factors considered by the Defendant, in addition to whether the applicant has 24 accounting course credit hours and a 3.0 grade point average, are the candidate's communication skills and motivation. (Warman Affidavit at ¶¶ 7–9; Parsippany Exhibits Audit 2–4). When considering whether to promote that same accountant, the Defendant considers factors that include the employee's application of accounting and auditing standards, microcomputer proficiency, relationship with client personnel, and the ability to adhere to budgets and deadlines. (Sonderby Affidavit at ¶¶ 7–12; Parsippany Exhibit Audit 12). In determining that the accountant should be assigned to a particular client, on the other hand, the Defendant considers, among other things, the employee's level of experience, prior industry experience, and prior contact with the same client. (Sonderby Affidavit at ¶ 25; Parsippany Exhibits Audit 22–24).

---

**5.** The Court is aware that some courts hold that the different job levels of potential class members should not be considered in determining whether to certify a class. *See Wagner*, 836 F.2d at 591 (court should not look at representative's high position, but rather should consider whether he suffered injury "in the same manner" as members of the proposed class). It is the opinion of this Court, however, that these decisions do not provide a persuasive reason for ignoring the differences in criteria used for decisionmaking for each job level in this case. One of the purposes of the class action device is to provide a more efficient method for the presentation of proof than with individual actions. *Falcon*, 457 U.S. at 154–56, 102 S.Ct. at 2369. Accordingly, this Court will follow the reasoning of those courts that have considered the job levels of potential class members in determining whether to certify a class. *See, e.g., Wells v. General Electric Co.*, 78 F.R.D. 433, 437–39 (E.D.Penn.1978) (class that includes 28 different job levels presents commonality and typicality problems because defendant's policies do not apply with equal force to each segment); *Wakefield v. Monsanto*, 120 F.R.D. 112, 116–17 (E.D.Mo.1988) (class of exempt and non-exempt employees not sufficiently common because employment practices and criteria not applied in the same way to each segment); *Johnson v. Bond*, 94 F.R.D. 125, 130–31 (N.D.Ill. 1982) (class that included clerical staff, air traffic controllers and management personnel held not sufficiently common given that members did not share the same job qualifications and conditions).

The factors used in considering whether to hire the accountant are not the same as those used in considering whether to hire employees for other positions. Qualifications for a Programmer Analyst in the Hermitage Information Systems office include four years programming experience, one year of experience in systems analysis/design, and being a "self starter". (Hermitage Ex. 20). On the other hand, in the Parsippany office, specifications for a secretarial opening include a high school diploma, three to five years experience, and ability to work well independently. (Parsippany Ex.Adm. 11).

Furthermore, unlike the accountant applicant in Parsippany's Audit function, described above, the accountant applicant for a position in Tax in the South Florida office, will generally be required to have 30 additional hours of accounting instruction in addition to that required to obtain an accounting degree, given the requirements of that state to sit for the CPA exam. (Hurvitz Affidavit at ¶ 8).

Plaintiffs argue that there is commonality among the class members because Defendant's decisionmaking processes are uniform and centralized. Plaintiffs do not allege that there is one central decisionmaking authority.[6] They appear to concede that most or all employment decisions are actually made at the local level.[7] They do contend, however, that the criteria and procedures for hiring, evaluating, promoting, and compensating are set nationally and followed nationwide by the local decisionmakers. They argue that all Defendant's offices use a uniform application form, hiring interview form, and performance evaluation form.

The Court is not persuaded that the evidence supports the Plaintiffs' assertions. It does appear that some offices use the same application forms for administrative personnel (Deposition of Gary B. Brentlinger at 161)[8], and that others use the same application for Audit and Management Consulting (Deposition of James H. Wall at 19). In addition, it appears that some offices use the same form for evaluation of Audit employees. (Wall Deposition at 28–29, 46–50, 155–56).

But this does not prove the application of uniform criteria set by the national personnel office as to all types of employees. At best, the evidence indicates centralization primarily regarding routine personnel matters, such as employee benefits, which are not challenged by Plaintiffs. Decisions about hiring, evaluation, job assignment, etc. are, by and large, made locally, and the criteria used by local decisionmakers, and/or the weight given to a particular criterion, tend to vary from one local office to another.[9] Accordingly, the Court is not persuaded that all members of the class are united by centralized decision-

---

6. The evidence indicates that the role of the national personnel office is to provide information and to act in an advisory role to local decisionmakers. To the extent the national personnel office makes any suggestions with respect to the criteria and procedures for making employment decisions (for example, through the use of "model forms"), it does not seek to obtain compliance with those criteria and procedures, nor have the Plaintiffs challenged any of those suggestions as discriminatory.

7. There are three promotion decisions that are not made at the local level: (1) promotion to the owner level (partner or principal), which is voted on by the existing owners; (2) approval of the local decision to promote employees to Senior Manager in Tax and Management Consulting; and (3) approval of expedited promotions in Audit or Tax. (Wall Affidavit at ¶¶ 34–37). The Plaintiffs' claims do not involve these three exceptions.

8. The parties submitted only the cited portions of depositions. Reviewing only these excerpts, the Court found it extremely difficult to determine whether the parties' arguments were fully supported by their citation. The parties are advised that the Court will no longer consider proof provided through a deposition excerpt. The Court will accept "small print" depositions, or will consider other proposals, if the parties contend that submission of an entire deposition is unduly burdensome. However, the parties shall file only pivotal depositions, and shall not file all depositions taken in this case.

9. For example, work experience in information technology is more important to the Northern California Management Consulting Practice, while experience in other areas, like health care and financial services, are more important to the Parsippany Management Consulting Practice. (Affidavit of Paul Gallagher at ¶¶ 9, 15; Affidavit of Mark Norland at ¶ 11). In evaluating personnel, client development is more important in the Parsippany Tax Function because the headquarters of several large corporations are located nearby. (Affidavit of William Iannacone at ¶ 8).

making or application of uniform decision-making criteria. *See, e.g., Bradford v. Sears, Roebuck and Co.,* 673 F.2d 792, 795–96 (5th Cir.1982) (commonality not shown where personnel administration differed from facility to facility); *Stastny v. Southern Bell Telephone and Telegraph Co.,* 628 F.2d 267, 278–80 (4th Cir.1980); *Rosenberg v. University of Cincinnati,* 118 F.R.D. 591, 593–96 (S.D.Ohio 1987); *Gramby v. Westinghouse Electric Corp.,* 84 F.R.D. 655, 659–60 (E.D.Penn. 1979); *Wells,* 78 F.R.D. at 438–39 (guidelines disseminated from central personnel office do not unite class when plaintiffs do not challenge policies themselves, but their implementation on a local level).

## C. *Typicality*

■ Analysis of typicality is similar to commonality, but there is a stronger focus on the representative Plaintiffs. Together and on behalf of the proposed class, these Plaintiffs challenge decisions involving the following: hiring, evaluation, compensation, promotion, job assignment, training, mentoring, work schedules, support services, hostile work environment, notice of employment opportunities, retaliation, termination, and constructive discharge. As the Court explained above, there are significant differences in personnel systems for each type of employee. Accordingly, this Court is of the opinion that members of each job type should have separate representatives to advance their claims. *See, e.g., Griffin,* 823 F.2d at 1490–91 (employee complaining of subjective promotion decisions could not represent those complaining of hiring decisions, which are based on objective criteria); *Ladele v. Consolidated Rail Corp.,* 95 F.R.D. 198, 202–04 (incumbent employee could not represent rejected applicants given differences in claims).

Plaintiff Kamili Williams is the only accountant among the representative Plaintiffs. She challenges decisions involving compensation, promotion, job assignment, and claims she was constructively discharged. She does not claim discrimination in decisions involving other areas alleged by the Plaintiffs as a group, including hiring and termination.

The only hiring claim is brought by Plaintiff Steven McIntosh, who sought a position as an experienced applicant in the Northern California Management Consulting Practice. None of the other representative Plaintiffs has been employed by the Defendant in Management Consulting.

Consequently, members of the class who are management consultants and desire to pursue claims challenging all decisions except hiring would have to be represented by the other Plaintiffs. By the same token, members of the class who seek to bring hiring claims for positions other than Management Consulting (*e.g.,* Secretary, Facilities Engineer) would have to be represented by Plaintiff McIntosh. Consequently, the claims of these representatives do not possess the same essential characteristics as the class they propose to represent.

With respect to administrative personnel, the Court is of the opinion that, although they may both be considered administrative jobs, clerical personnel and information systems personnel should have their own representatives. The differences in criteria used in making personnel decisions about each of these types of positions are too great for a representative of one group to adequately represent the other group.

The other administrative position was held by Plaintiff Anthony Williams, who worked as a Facilities Engineer at Defendant's Hermitage, Tennessee office. The evidence submitted by the parties does not address in detail the criteria used in making employment decisions regarding this job category. Consequently, the Court is unable to determine whether Mr. Williams is the only Plaintiff who could adequately represent members of the class who fall within this group.

Plaintiffs Appleton and Dickenson would fall within the clerical category. Together, these Plaintiffs challenge decisions involving compensation, job assignment, work schedules, support services, training, termination, and claim hostile work environment. They do not claim discrimination in evaluation, and the other decisions challenged by the Plaintiffs as a group. Consequently, members of the class who fall within the clerical category would have to be represented by the other representative Plaintiffs as to these other

claims. As noted above, the differences between clerical personnel and other job levels leads the Court to conclude that the other representatives could not adequately represent clerical personnel as to these claims.

Plaintiffs Liggin and Smith fall within the information systems category. Their claims involve decisions about evaluations, compensation, promotion, training, job assignment, retaliation, and constructive discharge, and claim they were subjected to a hostile work environment. They do not claim discrimination in hiring, termination or the other claims raised by the Plaintiffs as a group. As noted above, the differences between information systems personnel and other job levels leads the Court to conclude that the other representatives could not adequately represent information systems personnel as to these claims.

### D. *Adequacy of Representation*

 As noted above, this requirement focuses on the competency of class counsel and the existence of any conflicts of interest among potential class members. The Court finds, and the Defendants do not appear to contest, that Plaintiffs' counsel will adequately represent the class.

On the other hand, the Court is concerned with potential conflicts of interest among proposed class members. Several courts have held that supervisory employees and nonsupervisory employees should not be in the same class because their interests potentially conflict. *See, e.g., Wagner,* 836 F.2d at 595; *Gonzalez v. Brady,* 136 F.R.D. 329, 333 n. 12 (D.C.1991); *Wakefield,* 120 F.R.D. at 116–17. In other words, members of the proposed class who are supervisors have likely been responsible for evaluating the performances of other members of the class—evaluations these nonsupervisory personnel may challenge as discriminatory. For example, one of the potential class members who has filed an affidavit, Jean Augustin, a Senior Consultant in the Management Consulting function, raises a discriminatory evaluation claim. Defendant indicates, however, that one of the supervisors who evaluated Mr.

Augustin was African American, and himself potentially a member of the proposed class. *See Georgine v. Amchem Products, Inc.,* 83 F.3d at 631 ("the fact that plaintiffs of different types were among the named plaintiffs does not rectify the conflict" of interest existing among class members).

Accordingly, the Court's concern about this potential conflict of interest is another factor that weighs against certification.

### V. *CONCLUSION*

Having considered the four requirements of Rule 23(a),[10] the Court is of the opinion that, on balance, the relevant factors weigh against certification of the class as proposed. Even though these factors indicate some common issues, the court finds that the differences outweigh the similarities. Accordingly, the Court DENIES Plaintiffs' Motion for Class Certification (Docket No. 542).

This matter is referred back to the Magistrate Judge for consideration of nondispositive matters. The parties shall propose to the Magistrate Judge, by July 19, 1996, a schedule for responding to the pending Motion for Summary Judgment. The Magistrate Judge shall enter an appropriate scheduling order.

It is so ORDERED.

---

**10.** Given the Court's determination that Plaintiffs have not met the requirements of Subsection (a) of Rule 23, the Court finds it unnecessary to apply the requirements of Subsection (b)(2) and (b)(3) to the proposed class.