Marc BACON, et al., Plaintiffs,

v.

HONDA OF AMERICA MFG.,
INC., Defendant.

No. C2–99–803.

United States District Court,
S.D. Ohio,
Eastern Division.

March 7, 2001.

Robert Alan Steinberg, Waite, Schneider, Bayless & Chelsey, Cincinnati, OH, John Spenceley Marshall, Columbus, OH, for plaintiffs.

Mary Ellen Fairfield, Vorys, Sater, Seymour & Pease, Columbus, OH, for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an employment discrimination action filed by plaintiffs Marc Bacon and Terry Harden against defendant Honda of America Manufacturing, Inc. (hereinafter "Honda" or "the defendant"). Plaintiffs Bacon and Harden, who are employed as production associates at Honda, allege that the defendant has engaged in a pattern and practice of discrimination against African–Americans by denying them favorable positions, skilled positions, transfers and promotions, through the operation of a "buddy system," and through the use of both objective and subjective employment criteria in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, Ohio Revised Code § 4112.99, and Ohio common law. The plaintiffs rely on both the disparate impact and disparate treatment theories of liability. The plaintiffs seek declaratory and injunctive relief, promotion to desired positions, the implementation of sensitivity train-

ing, an employee grievance system and an equal employment opportunity program under the supervision of a court-appointed expert for two years, compensatory damages, punitive damages and back pay.

On September 29, 2000, the plaintiffs filed a motion for class certification of their claims pursuant to Fed.R.Civ.P. 23.[1] The court conducted an evidentiary hearing on this motion from December 18, 2000, through December 21, 2000.

### I. Miscellaneous Pending Motions

Prior to addressing the plaintiffs' motion for class certification, the court will note on the record its rulings on several other motions which were filed prior to the class certification hearing. The plaintiffs' motion of September 15, 2000 (Docket # 86) for leave to file a surreply to the defendant's reply memorandum in support of its appeal of the July 11, 2000 order of the magistrate judge is granted. Defendant's motion of October 20, 2000 (Docket # 101) for leave to file a memorandum in opposition exceeding twenty pages is granted. Defendant's motion of November 16, 2000 (Docket # 107) for leave to supplement its exhibits to the memorandum contra the motion for class certification is granted. The plaintiff's motion filed on December 5, 2000 (Docket # 118) for leave to file corrected exhibits to the motion for class certification is granted.

On December 4, 2001, the defendant filed a motion (Docket # 117) to strike portions of the plaintiffs' reply brief to the defendant's memorandum contra the motion for class certification, or in the alternative, for leave to file a supplemental memorandum in opposition. The defendant's motion to strike is denied, and the defendant's motion for leave to file a supplemental memorandum in opposition is granted. The plaintiffs' December 6, 2000 motion (Docket # 121) to strike the defendant's motion (Docket # 117) is denied.

The defendant filed a motion in limine (Docket # 116) on December 4, 2001 seeking to exclude evidence from the class certification hearing. Specifically, the defendant seeks to exclude: (1) certain survey evidence concerning perceptions of discrimination at Honda; (2) the "Glass Ceiling Report", which did not specifically concern Honda; (3) certain 1991 Congressional hearing testimony concerning employment discrimination, which included a reference to Honda as being a company committed to nondiscriminatory practices; (4) evidence relating to the 1991 Management Development Project, in which upper-level management employees at Honda were interviewed concerning topics other than race discrimination; (5) a memorandum entitled "Certain Minority Issues" which was prepared by a public relations firm regarding the perceptions of persons outside Honda regarding the existence of race discrimination at Honda; and (6) the 1988 conciliation agreement between Honda and the Equal Employment Opportunity Commission ("EEOC").

The various surveys were referred to during the class certification hearing. The court will deny the motion in limine with respect to these surveys and will consider this evidence for whatever it is worth as bearing on the issue of class certification. Items (2) through (6) are not relevant to the issue of class certification currently before the court, and the motion in limine is sustained as to these items.[2] In so ruling, the court has made no

---

1. The plaintiffs were granted leave on July 19, 2000, to file a second amended complaint adding Mizella Bailey, a non-exempt Production Staff employee, and exempt employees Donald Taylor and Sherman Manuel as additional named plaintiffs and class representatives. However, in an order filed on October 13, 2000, this court stayed any further proceedings on the second amended complaint pending this court's decision on the motion for class certification. Thus, the issue of class certification presently before the court is limited to whether a class may be certified with the original named plaintiffs, Bacon and Harden, as class representatives.

2. The surveys in question constitute or are analogous to reputation evidence, which is not a specific employment practice and is not admissible to establish a claim of discrimination, particularly where, as here, there is no evidence that the employer deliberately created or fostered its reputation as a discriminator to somehow further its policies of discrimination. See E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1280-81 (11th Cir.2000). The 1988 conciliation agreement is also arguably barred from being used as evidence under 42 U.S.C. § 2000e–5(b), which provides in relevant part: "Nothing said or done during and as part of such informal endeavors

determination concerning whether this evidence would be admissible at trial.

The defendant has moved for an order excluding the expert testimony of James McClave and Philip Way (Docket # 113). In a motion filed on December 1, 2000 (Docket # 114), the plaintiffs moved to strike the defendant's motion to exclude expert testimony. The plaintiffs' motion to strike is denied.

In its motion for the exclusion of expert testimony, the defendant requests this court to conduct a preliminary inquiry into the admissibility of this evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Fed.R.Evid. 702. Although at least one court has found that the Federal Rules of Evidence apply to proceedings under Rule 23, *see Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 938 (7th Cir.1989)(evidence rules apply to fairness hearing under Fed.R.Civ.P. 23(e)), other courts have concluded that on a motion for class certification, the evidentiary rules should not be strictly applied. *See In re Hartford Sales Practices Litigation,* 192 F.R.D. 592, 597 (D.Minn.1999)(declining to address admissibility of exhibits at class certification hearing); *Thompson v. Board of Educ. of Romeo Community Sch.,* 71 F.R.D. 398, 401–02 n. 2 (W.D.Mich.1976)(concluding that evidence rules not binding in preliminary matters such as class certification, particularly where documentary evidence was not challenged as inaccurate, but only that necessary foundation had not been laid), *rev'd on other grounds,* 709 F.2d 1200 (6th Cir.1983).

Courts have declined to engage in a *Daubert* analysis at the class certification stage of the action on the ground that an inquiry into the admissibility of the proposed expert testimony under *Daubert* would be an inappropriate consideration of the merits of the plaintiff's claims. *See O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 321 n. 7 (C.D.Cal.1998); *In re Polypropylene Carpet Antitrust Litigation,* 996 F.Supp. 18, 26 (N.D.Ga.1997)(postponing *Daubert* analysis,

noting that at class certification stage, the court simply examines whether expert's methodology will comport with basic principles, will have any probative value, and will primarily use evidence that is common to all members of the proposed class).

In *In re Visa Check/Mastermoney Antitrust Litigation,* 192 F.R.D. 68, 76–77 (E.D.N.Y.2000), the court observed that "there is a role for a *Daubert* inquiry at the class certification stage" and expressed doubt that a court could certify a class "on the basis of an expert opinion so flawed that it is inadmissible as a matter of law." However, the court concluded in that case that the proffered expert testimony was admissible "for the narrow purpose for which it is offered: to support the plaintiff's class certification motion." *Id.* at 78. This court is unable to say at this stage of the proceedings that the expert evidence offered by the plaintiffs is so flawed as to be inadmissible as a matter of law.

█ The weighing of statistical evidence is not appropriate at the class certification stage. *Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283, 293 (2d Cir.1999); *Hopewell v. University of Pittsburgh,* 79 F.R.D. 689, 693 (W.D.Pa.1978)(noting it is improper at class certification stage to comment on the sufficiency of plaintiffs' statistical evidence in relation to proof of a *prima facie* case). However, this does not mean "that the conclusions plaintiffs urge on the basis of this evidence must be accepted uncritically. For common questions to exist, plaintiffs' statistical evidence must logically support the inference of discrimination against the class asserted." *Hopewell,* 79 F.R.D. at 693. The appropriate inquiry is whether the statistics "are sufficient to show . . . the existence of common questions." *Id.*

█ This court concludes that a *Daubert* inquiry is not warranted at this stage of the proceedings, and the defendant's motion to exclude this evidence is denied insofar as this evidence has been offered in support of the class certification motion. However, the

may be ... used as evidence in a subsequent proceeding without the written consent of the persons concerned." *See Equal Employment Op-*

*portunity Commission v. Akron Nat'l Bank & Trust Co.,* 497 F.Supp. 733, 737 (N.D.Ohio 1980).

court will carefully scrutinize this expert testimony to determine whether it in fact supports the certification of a class in this case. This ruling does not preclude the defendant from making a later motion under *Daubert* to exclude the admission of this evidence at trial.

## II. Plaintiffs' Motion for Class Certification—Nature of Claims

The court will now address the motion for class certification. The plaintiffs seek to certify a class of all current and former African–American employees who have been employed by Honda since 1977. The broad class proposed by the plaintiffs would include nonexempt employees, such as production associates, team leaders, production staff employees, and other miscellaneous nonexempt employees, as well as exempt or managerial employees. Marc Bacon and Terry Harden, the named plaintiffs in the original complaint, are production associates.

The evidence reveals that Honda has four manufacturing plants in the central Ohio area: the Marysville Auto Plant (MAP), which manufactures Accord and Acura automobiles and has eight production departments; the Marysville Motorcycle Plant (MMP), which manufactures Honda motorcycles, motorcycle engines, and four-wheel utility vehicles and has five production departments; the Anna Engine Plant (AEP), which manufactures drive and crankshafts, engines, and brake and suspension components and has eleven production departments; and the East Liberty Plant (ELP), which manufactures Honda Civics and has seven production departments. Other departments at Honda include the quality departments, which are technical production departments responsible for inspecting products coming off the line, the purchasing departments, and various business administration departments such as the Associate Relations Department which handles personnel matters. These other departments encompass both business administration staff exempt positions and office support staff nonexempt positions. In all, there are thirty-nine departments at Honda.

Sixty percent of Honda's 12,700 employees are production associates involved in production work. The production associates are supervised by team leaders, who are nonexempt employees. The team leader positions, being the first supervisory level over production associates, are filled from the ranks of production associates. Production associates in many departments may also seek a promotion to the nonexempt production staff position, although at least one department, MAP Assembly, filled its production staff positions from the ranks of team leader within that department. The duties of the production staff include special projects and equipment-related tasks. The next level of management above team leader and production staff is the exempt position of production coordinator. The production coordinator reports to an assistant manager or department manager, who in turn reports to a senior manager or plant manager.

Production associates are only permitted to apply for promotion to team leader or production staff positions in the department in which they are currently working, and some minimum time worked in that department is typically an additional requirement for promotion. The employee must also have some minimum period of employment at Honda, a minimum attendance record, typically ninety-eight percent or above, and a disciplinary record devoid of managerial level counselings [3] for the previous year. The associate's performance rating on annual evaluations for a certain period, such as the past

---

3. Honda employs a disciplinary system with graduated levels. The first level of counseling is by the production coordinator, and may consist of the lesser level of coaching instead of counseling. The second level of counseling is administered by Honda's Associate Relations Department, which maintains personnel at each of the manufacturing facilities. The third level of counseling is the managerial level. The system gives supervisors some discretion in determining which level of counseling is appropriate for any particular violation. The most common variety of counseling occurs as a result of attendance issues. The progressive system of discipline for attendance problems features a seven-step process of coaching and counseling by coordinators, the Associate Relations Department and managers, culminating in placement on an Attendance Improvement Program.

two years, may be a factor in determining ranking. Some departments may require the production associate to pass a trade test, to have completed a New Honda Circle ("NH Circle")[4] or to have accumulated a certain number of VIP points awarded for the completion of special projects such as an NH Circle. The associate applying for a team leader position must often be willing to work any shift or to travel.

To be considered for a promotion to team leader or production staff, the production associate must have indicated an interest in promotion to those positions on his annual evaluation form. The various departments also utilize some type of interview procedure which may involve the associate being asked to complete some type of questionnaire. Each department has its own ranking, scoring and selection criteria, and is free to ask questions which are uniquely tailored to the particular needs and functions of that department. These criteria have changed over time. For example, beginning in April of 1998, Honda instituted a new promotion system which required associates to submit a promotion pool interest form, to take a training course, and to pass an assessment on the training materials to be considered for promotion, but this system was abandoned in March of 2000, and the training is now administered after promotion to the position. The promotion decisions are made by the coordinators or managers in the particular department. The scoring for interviews and the procedures used in the promotion process are reviewed by administration, but only to ensure that the department has correctly followed its promotion procedures.

The vacant team leader or production staff positions are posted in the department in which they occur. Since team leaders within the department are permitted to apply for a transfer to a vacant position on another shift, based on their seniority, it is not always possible to guarantee that the vacant position will remain as originally posted, and therefore, the exact nature of the vacant position is not always described.

During one period, production associates could seek a promotion to exempt positions in other nonproduction departments by completing a career interest application (CIA) and submitting this form to administration, where it was kept on file for one year. Various departments such as the purchasing department were free to consider CIA applications or to fill the vacant position with an applicant from outside the company. The CIA system was replaced by a new posting system in March, 2000. Production associates can also apply for positions in the quality or skilled departments. The quality departments require applicants to complete an application and to pass a technical test, the Bennett Mechanical Comprehension Test, and the Tabe reading and math tests. Candidates are then placed in a quality pool maintained for promotions, and the decision to promote is made by the quality department. CIA promotions to exempt positions often entail unique procedures based on the position in question.

Production associates may request to be transferred to a different production department if they have at least two years' tenure at Honda, at least one year in their current department, at least a ninety-eight percent attendance record, and no discipline above a certain level for the previous year. Transfers are awarded based on the availability of openings and the associate's "clock number"—the number he uses to clock into work—which is assigned based upon the associate's hire date and reflects the associate's seniority.

The claims advanced by the plaintiffs include race discrimination and the creation of a hostile work environment through the denial of favorable positions, skilled positions, transfers and promotions, through the operation of a "buddy system," and through the use of both objective and subjective employment criteria. The plaintiffs propose the certification of class claims which would proceed under both the disparate impact and pattern or practice disparate treatment theories of liability. Class pattern or practice

---

4. An NH Circle is a group of associates who meet on an overtime basis to work on a project for improving some aspect of the production process or to solve a particular production problem.

disparate treatment claims, like individual disparate treatment claims, require proof of discriminatory intent, whereas disparate impact claims do not. *E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1273 (11th Cir. 2000).

*A. Disparate Impact*

A disparate impact claim under Title VII is established where a particular employment practice has caused a significant adverse effect on a protected group. *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). The disparate impact theory prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a protected class even though there is no proof of discriminatory intent. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 986–87, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Joe's Stone Crab,* 220 F.3d at 1274. The disparate impact method of proof may apply to claims alleging discrimination based on an employer's subjective decisionmaking, although the use of subjective criteria in decisionmaking is not discriminatory per se. *Watson,* 487 U.S. at 989, 108 S.Ct. 2777.

The plaintiff in a disparate impact case must demonstrate that the employer uses a particular employment practice that causes a disparate impact on the basis of race. 42 U.S.C. § 2000e–2(k)(1)(A)(i). This is accomplished by demonstrating disparities through statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. *Watson,* 487 U.S. at 987, 994, 108 S.Ct. 2777; *Joe's Stone Crab,* 220 F.3d at 1274–75.

Once the plaintiff establishes the adverse effect, the burden shifts to the employer to produce evidence that the challenged practice is a business necessity. *United States v. City of Warren, Mich.,* 138 F.3d 1083, 1091 (6th Cir.1998).[5] If the employer is successful at establishing a business necessity defense,

the plaintiff may still prevail by proving that other means or devices which do not entail an undesirable racial effect would be equally effective in serving the employer's legitimate interests, and that the employer's practices were a pretext for discrimination. *Ward's Cove,* 490 U.S. at 660–61, 109 S.Ct. 2115; 42 U.S.C. § 2000e–2(k)(1)(A)(ii).

The plaintiff must demonstrate that each particular challenged employment practice causes a disparate impact, "except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." 42 U.S.C. § 2000e–2(k)(1)(B)(i). In offering statistical evidence, the plaintiff must eliminate the most common nondiscriminatory reasons for the disparity. *Mozee v. American Commercial Marine Service Co.,* 940 F.2d 1036, 1045 (7th Cir.1991). The plaintiffs need not take into account all measurable variables, but must include the major factors potentially responsible for any disparity. *Id.* "Normally, failure to include variables will affect the analysis' probativeness, not its admissibility." *Bazemore v. Friday,* 478 U.S. 385, 400, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986).

The plaintiff in a disparate impact case may seek only equitable relief such as injunctive and declaratory relief, reinstatement to a position and back pay, and a jury trial is not mandated. 42 U.S.C. § 1981a(a)(1) (compensatory and punitive damages not available in disparate impact case); 42 U.S.C. § 2000e–5(g) (providing for equitable relief under Title VII).

The plaintiffs in this case allege that various objective requirements for promotion employed by Honda result in an adverse impact on minorities. The plaintiffs allege that neutral criteria or practices such as the seniority requirement, the time-in-department requirement, the attendance requirement, the requirement of indication of interest in promotion, the limitation of team

---

**5.** In the absence of a business necessity defense, the employer may also prevail by demonstrating that the specific employment practice under attack does not cause the disparate impact. 42 U.S.C. § 2000e–2(k)(1)(B)(ii).

leader or production staff promotions to positions within the associate's department, the failure to post jobs, to permit applications for a specific job, or to identify the precise nature of the vacancy, and the use of trade tests all have a disparate impact on minority promotions. The plaintiffs also seek to employ the disparate impact method of proof to challenge the use of certain criteria which have subjective components, such as the use of annual performance reviews, disciplinary records, VIP or NH Circle points, and interviews and other devices requiring some subjective evaluation by a supervisor.

*B. Class Disparate Treatment—Pattern or Practice Claim*

A disparate treatment claim under Title VII, § 1981 and § 4112.99 is established where the plaintiff shows that the employer intentionally treated him or her less favorably than similarly-situated nonminority employees because of his race. *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).[6] To prove a prima facie case of disparate treatment, a plaintiff must show that he (1) belongs to a racial minority, (2) suffered an adverse action, (3) was qualified for the position, and (4) he was treated differently from similarly situated or qualified nonminorities. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the prima facie case is established, the employer must produce evidence that the plaintiff was not promoted for a legitimate, nondiscriminatory reason. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may rebut the employer's nondiscriminatory reason with evidence of pretext, but the burden of proof remains with the plaintiff at all times. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

To establish a disparate treatment class action claim under the "pattern or practice" theory of disparate treatment, the plaintiffs must prove more than the mere occurrence of isolated, accidental or sporadic discriminatory acts; rather, the plaintiffs must show that racial discrimination was the employer's "standard operating procedure—the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336–38, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 874–76 n. 9, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). Such an action focuses on whether there exists a pattern of discriminatory decisionmaking. *Cooper,* 467 U.S. at 874–76, 104 S.Ct. 2794.

The plaintiffs may establish a prima facie case of pattern or practice disparate treatment by the use of statistics which show a gross disparity in the treatment of workers based on race. *Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1285 (5th Cir.1994). The plaintiffs may bolster their case by introducing historical, individual, or circumstantial evidence. *Id.* The employer may then rebut the plaintiffs' prima facie case by showing that the plaintiffs' statistics are inaccurate or insignificant, or by providing a nondiscriminatory explanation for the apparent discrimination. *Id.*

Plaintiffs alleging individual or pattern or practice disparate treatment claims may recover compensatory and punitive damages. 42 U.S.C. § 1981a(a)(1). Compensatory damages include relief for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). Compensatory damages do not include backpay, interest on backpay, or other equitable relief awardable under Title VII. 42 U.S.C. § 1981a(b)(2). Punitive damages may be recovered if the employer discriminated "with malice or with reckless indifference to the federally protect-

---

**6.** The evidentiary framework applicable to disparate treatment claims under Title VII is also applicable to claims under § 1981. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). Ohio courts have likewise held that the law in Title VII cases is generally applicable to discrimi- nation claims under § 4112.99. *See Little Forest Medical Center v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991); *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128 (1981).

ed rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Under the provision relevant to the instant case, compensatory and punitive damages awarded to each complaining party are limited to $300,000 under 42 U.S.C. § 1981a(b)(3)(D) on the Title VII claims, but this limit does not apply to the plaintiffs' claims under § 1981, *see* 42 U.S.C. § 1981a(b)(4), or under state law. In all cases in which the plaintiff seeks compensatory and punitive damages, either party is entitled to demand a trial by jury. 42 U.S.C. 1981a(c).

The plaintiffs in this case allege that Honda has intentionally engaged in disparate treatment based on race through a pattern or practice of race discrimination. The plaintiffs allege that Honda intentionally engaged in race discrimination and the creation of a hostile work environment through the denial of favorable positions, skilled positions, transfers and promotions. The plaintiffs also allege that a "buddy system" existed at Honda, whereby friends assured that friends received promotions.[7]

The plaintiffs claim that African–Americans were subjected to disparate treatment through the selective manipulation of otherwise neutral employment criteria. For example, the plaintiffs contend that nonminorities were given preferential treatment in regard to attendance. Honda maintains a computerized system of attendance whereby absences or instances of tardiness result in an "occurrence" on the employee's record if not excused either by an authorized absence, such as sick leave, or, at the election of the employee, by the use of accrued vacation time or occurrence coverage. The plaintiffs contend that nonminority associates were granted more favorable treatment in having their "occurrences" eliminated from the computerized system or through the coordinator failing to report the violation to the Associate Relations Department within three days for action. The plaintiffs also allege that the time-in-department requirement can be deliberately sabotaged in the case of minority applicants for promotion by the use of involuntary transfer to another department.

The plaintiffs also allege disparate treatment in the promotional criteria which involve a subjective component or the exercise of supervisor discretion. The plaintiffs contend that promotional opportunities for minorities at Honda are intentionally undermined on the basis of race through the use of lower performance evaluations, lower interview scores by supervisors during the promotion process, and the unequal imposition of discipline.

*III. Class Certification—Rule 23(a) Requirements*

Certification is governed by Fed.R.Civ.P. 23, which includes the following prerequisites for class certification:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would

---

7. The court questions whether this claim may serve as a basis for class certification. The Sixth Circuit has held that charges of nepotism or favoritism toward friends and relatives, even if proven, do not constitute evidence of impermissi-

ble discrimination under Title VII or § 1981 sufficient to support a disparate treatment claim. *See Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1096 (6th Cir.1996)(citing *Holder v. City of Raleigh,* 867 F.2d 823, 825–26 (4th Cir.1989)).

as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

District courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In determining whether a class should be certified, the court must not delve into the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, the court may "probe behind the pleadings before coming to rest on the certification question[,]" *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364, and consider evidence presented by the parties on the maintainability of the class action. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974). The party seeking the class certification bears the burden of proof. *Falcon*, 457 U.S. at 161, 102 S.Ct. 2364; *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

The parties do not dispute that the first requirement under Rule 23(a)(1), that of numerosity, has been satisfied by the class proposed by the plaintiffs, which is estimated to consist of over eight hundred employees and former employees. The remaining requirements under Rule 23(a) are commonality, typicality, and adequacy of representation. These requirements tend to merge. *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364. For example, where there is no specific evidence identifying the questions of law or fact that are common to the claims of the plaintiffs and of the members of the class they seek to represent, then it is error to presume that the plaintiffs' claims are typical of other claims against the employer by class members. *Id.* at 158–59, 102 S.Ct. 2364. The adequate representation requirement also overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members. *American Medical Systems*, 75 F.3d at 1083.

*A. Commonality*

█ Rule 23(a)(2) requires that for certification there must be "questions of law or fact common to the class." Class certification is "particularly appropriate" when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. *Falcon*, 457 U.S. at 154–156, 102 S.Ct. 2364. Commonality does not require that the plaintiffs' claims be identical. There need be only a single issue common to all members of the class, and the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not preclude the existence of commonality. *American Medical Systems*, 75 F.3d at 1080; *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988).

"It is not every common question that will suffice, however;" rather, it must be "a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Conclusory allegations of commonali-

ty or across-the-board discrimination will not satisfy the burden of proof on certification. *Falcon,* 457 U.S. at 157, 102 S.Ct. 2364 (there is a wide gap between an individual plaintiff's claim of race discrimination, coupled with an unsupported allegation of a company policy of discrimination, and the existence of a class of persons who have suffered the same injury as the individual plaintiff); *American Medical Systems,* 75 F.3d at 1081 (conclusory allegations on commonality not sufficient). Rather, the class representative must specifically enumerate the questions of law or fact common to the class. *Falcon,* 457 U.S. at 158, 102 S.Ct. 2364.

■ In the context of a class action alleging employment discrimination, factors which may be considered in determining whether commonality is present include the following: (1) what is the nature of the unlawful employment practice charged and does it peculiarly affect a few employees or does it have classwide impact; (2) how uniform or diverse are the employment practices, considering the size of the work force, the number of plants, the diversity of employment conditions, occupations and work activities, the degree of geographic dispersion and of intracompany transfers, and the degree of centralization of administration and supervision versus local autonomy; (3) how uniform or diverse is the membership of the class, and will the alleged discriminatory treatment involve common questions; (4) the nature of the defendant's management organization as it relates to the degree of centralization and uniformity of employment and personnel policies and practices; and (5) the length of time spanned by the plaintiffs' claims and whether similar conditions prevailed throughout the period. *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 41 (N.D.Cal. 1977).

■ The plaintiffs here seek to certify a class consisting of every African–American who has ever been employed at the Ohio Honda facilities. Commonality and typicality are established for such an across-the-board class where the employer operated under a general policy of discrimination which manifested itself to all class members "in the same general fashion, such as through entire-

ly subjective decisionmaking processes." *Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364. The plaintiffs allege that Honda has a subjective decisionmaking process which impacts the award of promotions. However, in applying *Falcon's* footnote 15, "courts have required plaintiffs to show that a defendant's decisionmaking process is *entirely* subjective before permitting an across the board attack." *Appleton v. Deloitte & Touche L.L.P.,* 168 F.R.D. 221, 228 (M.D.Tenn.1996). *See also Vuyanich v. Republic National Bank of Dallas,* 723 F.2d 1195, 1200 (5th Cir.1984); *Wynn v. Dixieland Food Stores, Inc.,* 125 F.R.D. 696, 701 (M.D.Ala.1989)(footnote 15 applies only where defendants used one entirely subjective selection system which employed same selection process regardless of the type or level of job filled).

Evidence has been presented to the court that the defendant does not employ entirely subjective criteria in selecting candidates for promotion. Although some factors considered in the promotion process, including interviews or questionnaires, disciplinary record and annual evaluations, may involve some subjective elements, an associate's eligibility for promotions is also based on certain objective criteria such as time at Honda, time in the department, attendance records, or test scores from objective trade tests. Even some of the subjective components are not entirely without structure. For example, the interviews are done using a pre-established set of questions for each applicant, and although the disciplinary system necessarily vests some discretion in the coordinators and managers, the managers frequently consult with each other and with the Associate Relations Department to compare cases in an effort to ensure that unduly severe or disproportionate discipline is not imposed. The court concludes that the nature of the plaintiffs' claims does not excuse them from their obligation under *Falcon* to establish commonality among the proposed class members. *See Appleton,* 168 F.R.D. at 229.

If commonality is to be found at all in this case, it would be found in the plaintiffs' disparate impact claims. Commonality and typicality may be more difficult to establish in cases alleging disparate treatment, *Nelson v.*

*U.S. Steel Corp.*, 709 F.2d 675, 679 n. 9 (11th Cir.1983), particularly in a case, as here, involving multiple facilities with significant local autonomy, *Stastny v. Southern Bell Tel. & Tel. Co.*, 628 F.2d 267, 274 n. 10 (4th Cir.1980).

As noted previously, the disparate impact claims in this case involve neutral criteria or practices such as the seniority requirement, the time-in-department requirement, the attendance requirement, the requirement of indication of interest in promotion, the limitation of team leader or production staff promotions to positions within the associate's department, the failure to post jobs, to permit applications for a specific job, or to identify the precise nature of the vacancy, the use of trade tests, and the consideration of factors which may involve subjective components, such as annual performance reviews, disciplinary records, VIP or NH Circle points, and interviews.

The above criteria, with the exception of trade tests and subjective components which vary from department to department and from supervisor to supervisor, appear to impact at least the production associate members of the proposed class in a like or similar way. Although there may be minor variations in these criteria,[8] and although the weight afforded those criteria in the promotion process might vary depending on the department, such differences are not critical to a finding of commonality on the disparate impact claim.[9]

However, the plaintiffs' disparate treatment claims and the disparate impact claims which involve subjective components raise different concerns about commonality. The plaintiffs allege that Honda considered subjective factors in making promotions and used subjective practices in imposing discipline and evaluating employee performance

which had a discriminatory impact on African-American employees. They further allege that the defendant intentionally engaged in race discrimination through the denial of favorable positions, skilled positions, transfers and promotions, through the existence of a "buddy system," through less favorable treatment of attendance problems, and through the use of subjective decisionmaking in performance evaluations, interviews, and the imposition of discipline. However, the plaintiffs have not shown that any of these practices extends to the proposed class as a whole.

The class sought to be certified includes over eight hundred African-Americans, and it encompasses employees in four manufacturing plants and thirty-nine departments. As indicated by the testimony of Dr. Frank Landy, an industrial organizational psychologist retained by the defendant to study its manufacturing operations, these departments perform diverse functions, including the casting of parts, the manufacture of engines and other automobile and motorcycle parts and components, the assembly of automobiles, welding and painting, requiring diverse levels of skill. The period of time covered by the plaintiffs' claims exceeds twenty years, during which time promotion practices have changed periodically. The promotion decisions, annual performance reviews, and disciplinary decisions are made by each department, by different coordinators and managers, as opposed to some centrally located decisionmaker. In light of the number of departments involved, the autonomy of those departments, the number of decisionmakers involved, and the diverse job functions and qualifications of those departments, the plaintiffs have not established that proof of any one class member's claim of disparate treatment will involve "a com-

---

8. For example, some departments require a ninety-eight percent attendance record while others require one hundred percent attendance. The time in department requirement also vary depending upon the nature of the production process in those departments.

9. The plaintiffs have presented statistical evidence which they claim would support a finding of disparate impact in regard to some of these promotion criteria. While there may well be

gaps in this evidence which the plaintiffs' experts have failed to address, it would not be appropriate for the court at this point to determine the weight or credibility to be assigned the testimony of these experts, or to resolve whether the plaintiffs have established the merits of their claims. The evidence presented is sufficient to make at least a marginal showing that these disparate impact claims would be common to the class.

mon issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.

This court notes that commonality is not established where the decisions allegedly constituting discrimination were made by different supervisors and decisionmakers. *See, e.g., Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 794 n. 4 (5th Cir.1982)(no commonality where evidence failed to show a uniform policy throughout various facilities); *Zachery v. Texaco Exploration and Production, Inc.*, 185 F.R.D. 230, 238–39 (W.D.Tex.1999)(fact that class members hold a wide variety of jobs in widely dispersed locations under different management with local autonomy, subject to numerous different evaluation and promotion systems, precluded finding of commonality for certification of disparate impact claim); *Reyes v. Walt Disney World Co.*, 176 F.R.D. 654, 658 (M.D.Fla.1998)(no commonality where plaintiffs employed by three separate departments with different decisionmakers); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 159 (D.Kan.1996)(no commonality where plaintiffs have failed to present evidence of centralized employment decisionmaking, and where claims were based on alleged discriminatory conduct of individual supervisors); *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480 (M.D.Ga.1995)(no commonality or typicality in disparate treatment case where plaintiffs employed in different departments and supervised by different people).

The fact that the Employee Relations Department maintained a check function to ensure that each department properly followed the department's own procedures in awarding a promotion is not sufficient to show centralized decisionmaking, where the Employee Relations Department had no authority to make the promotion decision. *See Rosenberg v. University of Cincinnati*, 118 F.R.D. 591, 593 (S.D.Ohio 1987)(commonality requirement not met where each department had its own promotion criteria and only centralized review was to ensure that each department adequately considered components in developing its own criteria and following them).

The court finds that, while the plaintiffs have arguably established commonality in regard to some of their disparate impact claims, as specified above, they have not shown that commonality exists in regard to their claims of disparate treatment. These disparate treatment claims are not subject to generalized proof, but instead are highly individualized depending on the circumstances of each employee, including that employee's qualifications and eligibility at the time of the vacancy, the criteria used by the particular department for promotion to the position sought, the timing and availability of vacancies in the department, and the persons in the department making the promotion decisions.

## B. Typicality

The next requirement for class certification is that the claims of the representatives are typical of those of the class. Fed. R.Civ.P. 23(a)(3). The typicality requirement limits the class claims to those fairly encompassed by the named plaintiffs' claims. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *American Medical Systems*, 75 F.3d at 1082.

To be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law. *Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir.1976). A claim is typical if it arises from the same event or course of conduct giving rise to the claims of other class members and is based on the same legal theory. *Id.* at 525. However, typicality is not present where a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Sprague*, 133 F.3d at 399.

Named plaintiff Marc Bacon commenced his employment at Honda in 1988 as a production associate in MAP welding. When a notice of an opening in the welding department was announced on November 3,

1989, he did not have eighteen months service at Honda, as required for that position. He transferred to MAP Assembly on May 5, 1991, and was thus ineligible for promotion to team leader until May of 1992. Beginning in 1992, MAP Assembly promoted only team leaders to production staff positions. In August, there was a job posting which required applicants to have completed an NH Circle within the previous twenty-four months, and he did not meet this requirement.

Over the years, Bacon indicated an interest in promotion to various positions, including team leader, production staff, office support staff, and purchasing. However, from 1994 through 1996, he did not indicate an interest to promotion to team leader and only those who did were considered for promotion. He indicated in 1996 that he was not interested in taking the department test. He transferred to MMP Assembly on February 3, 1997, and was thereafter ineligible for promotion until February 3, 1998. In April of 1998, Honda instituted a new promotion system which required associates to submit a pool interest form, to take a training course, and to pass an assessment on the training materials to be considered for promotion. Bacon never completed a pool interest form. In October, 2000, he completed a CIA. He was interviewed on three occasions for positions in the purchasing department. On one of those occasions, he did not meet the ninety-eight percent attendance requirement. On the other two occasions, other African-Americans were chosen for the position.

Terry Harden was first employed as a production associate at Honda in September of 1988, starting in the MAP Paint Department. In May of 1991, he transferred to MAP Assembly, where he remains today. He was ineligible for promotion for twelve months after his transfer. Beginning in 1992, MAP Assembly promoted only team leaders to the position of production staff, and there were no promotions to team leader from May of 1992 until December 31, 1992. In 1994 and 1995, he indicated an interest in being promoted to an office staff position and exempt staff, and was therefore not considered for a team leader position during those years. In 1996, he indicated an interest in the team

leader position but did not pass the department test. Harden took no steps to seek promotion to team leader between April, 1998, and March, 2000.

The above histories indicate that the efforts of Bacon and Harden to seek promotions may have been affected by the disparate impact of such facially neutral, objective selection devices as the seniority requirement, the time-in-department requirement, the attendance requirement, the requirement of indication of interest in promotion, and the limitation of team leader or production staff promotions to positions within the associate's department which the court has held meet the commonality requirement. In that respect, the disparate impact claims of these plaintiffs are typical of the disparate treatment claims of the proposed class.

However, the named plaintiffs have not demonstrated that their disparate treatment claims or their disparate impact claims based on subjective factors are typical of those of the class. For example, Bacon testified at the class certification hearing that he disagreed with his evaluation ratings in certain years, but made no connection between those evaluations and his failure to gain a promotion. He was ineligible for promotion during one period due to his attendance record, but has proffered no evidence that the person awarded the position he sought was given more lenient treatment for attendance violations. While Harden was ineligible for promotion to team leader due to his failure to pass a department test, there is no evidence that there are other African-American class members who were similarly disadvantaged by this test. According to the defendant, Bacon and Harden, made no complaints regarding job assignments or transfers in their depositions. There is no evidence that their discipline record was ever a factor in the failure of Bacon and Harden to win a promotion. Bacon was interviewed on three occasions for positions in the purchasing department, but there is no evidence that any subjective judgments made during these interviews constituted disparate treatment which was typical of that experienced by other class members, particularly since on

two occasions, African–Americans were awarded those positions.

Further, during some of the period in question, Bacon and Harden did not apply for the team leader position or other positions. A proposed class representative's claims for failure to promote are not typical of those of other class members claiming discrimination in promotion if the class representative never applied for a similar promotion. *See Warren v. ITT World Communications, Inc.,* 95 F.R.D. 425, 429 (S.D.N.Y. 1982). The court does not construe typicality as requiring that the named plaintiffs have applied for every single promotion in order to be typical class members. However, in light of the diverse promotion practices in place at Honda, where every department had its own promotion criteria, typicality has not been shown where the named representative never sought a promotion in his own department or other positions in nonproduction departments for which he may have been eligible.

The comments made in the discussion on commonality concerning the diversity of Honda's operations and the use of decentralized decisionmaking apply as well to the issue of typicality. Considering the large number of factors which are considered in the promotion process, the diversity in the promotion processes used by the various departments, the different qualifications of the various positions as dictated by the varying needs of the departments, and the large number of coordinators or managers who are making the various decisions which impact the promotion process, it has not been shown that the named plaintiffs have suffered the same injuries as the members of the proposed class.

Thus, the court concludes that, while typicality is arguably satisfied in regard to some of the plaintiffs' disparate impact claims, as outlined above, the plaintiffs have failed to show typicality in regard to their disparate impact claims based on trade tests or subjective decisionmaking or their disparate treatment claims.

## C. Adequacy of Representation

The final requirement under Rule 23(a) is that the class representative will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ There are two criteria for determining whether the representation of the class will be adequate: (1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter,* 532 F.2d at 524–25. *See also Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir.1998)(to satisfy the adequate representation requirements of Rule 23, there must be an absence of a conflict of interest and the presence of common interests and injury).

■ To the extent that the two named plaintiffs in the original complaint filed in this case are seeking to represent exempt employees or employees who are not production associates, they do not qualify as adequate representatives. Several courts have held that a conflict of interest may arise where nonsupervisory employees attempt to represent supervisory employees, or where exempt employees seek to represent nonexempt employees. *See, e.g., Gilchrist v. Bolger,* 733 F.2d 1551, 1554 (11th Cir.1984); *Appleton,* 168 F.R.D. at 233; *Wakefield v. Monsanto Co.,* 120 F.R.D. 112, 116 (E.D.Mo. 1988); *Grant v. Morgan Guaranty Trust Co. of New York,* 548 F.Supp. 1189, 1193 (S.D.N.Y.1982)(conflict of interest for class to represent both managers who process promotions and employees who apply for them).

At Honda, exempt level employees and even team leaders participate in employment decisions touching upon production associates

in matters of promotion, associate evaluations and discipline which would place them in the conflicting position of having to defend their actions against a discrimination challenge. The named plaintiffs have also not demonstrated that associates employed outside the production area in areas such as office support staff share common concerns with production associates.

■ It has also not been demonstrated that the named plaintiffs in this case would share common interests with former employees. Courts have declined to certify classes consisting of both former and present employees on the basis that commonality and typicality are lacking. *See, e.g., Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir.1992); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1035 (9th Cir.1990). Former employees may have no desire to return to work at Honda, and would have no interest in the injunctive relief relating to promotion policies sought by the named plaintiffs. Any claim that former employees have may be complicated by the length of their employment at Honda and the circumstances surrounding their termination of employment.

On the issue of the qualifications of counsel, the court in *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir.1995) noted that the responsibility of class counsel to absent class members whose control of the attorneys is limited does not permit even the appearance of divided loyalties, and the "appearance" of divided loyalties includes both differing and potentially conflicting interests, not merely instances actually manifesting such conflict.

The defendant argues that plaintiffs' counsel cannot adequately represent the class of African–Americans proposed in this case in light of the fact that three of the law firms representing the plaintiffs in this case (Laufman, Rauh & Gerhardstein; Waite, Schneider, Bayless & Chesley; and O'Hara, Ruberg, Taylor, Sloan & Sergent) also represent a proposed class of female Honda employees in the case of *Hoffman v. Honda of America Mfg., Inc.*, C–2–97–248, now pending in the United States District Court for the Southern District of Ohio, Western Division. In that case, the plaintiffs are alleging that Honda has discriminated against them in awarding work assignments, skilled positions, transfers, and promotions due to their gender. *See Hoffman v. Honda of America Mfg., Inc.*, 191 F.R.D. 530, 531 (S.D.Ohio 1999).

The relief sought by the *Hoffman* plaintiffs includes injunctive relief, reinstatement, back pay and front pay, and compensatory and punitive damages. Thus, the claims of the *Hoffman* plaintiffs mirror in many respects the class claims in this case, and the equitable relief sought, which might include promotion or assignment to certain positions of limited number or availability or other types of affirmative action, could foreseeably place these two classes in competition with each other.

The plaintiffs do not respond specifically to this argument, arguing instead that it is permissible to include more than one protected group in a single class. However, the focus of the defendant's argument is on the potential conflict which could arise as a result of counsel's representation of both of these groups. This question was discussed in *Beavers v. American Cast Iron Pipe Co.*, 852 F.2d 527, 531 (11th Cir.1988), where the court addressed the issue of whether counsel could adequately represent both a class of female employees and male employees suing the same employer. In that case, both classes challenged the employer's policy of providing health insurance to a child of an employee only when the child resided with the employee full time. The court permitted counsel to continue to represent both classes, reasoning that the relief sought by the classes was not conflicting because if one class succeeded in eliminating the policy, that result would also benefit the other class.

In the instant case, while some of the relief sought by the *Hoffman* class may also inure to the benefit of the proposed class in this case, the fact that class members from these two proposed classes may be seeking the same job assignments or promotions, which are limited in number, would be sufficient to create concern on the part of the male members of the African–American class that counsel may not be pursuing their interests

as rigorously in the conduct of the action or in settlement negotiations as they are the interests of the female *Hoffman* plaintiffs. One possible remedy for this situation would be the retention of new class counsel by either the *Hoffman* plaintiffs or the plaintiffs in this case. However, it is unknown whether the named plaintiffs in either case would be willing to retain new counsel at this stage, when the proceedings and discovery in both cases are well advanced. Such a course of action would likely result in the further delay of this case and a postponement of the current trial date.

Under the present stature of the case, the court concludes that adequacy of representation requirement has not been satisfied.

## IV. Class Certification—Rule 23(b) Requirements

In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).

### A. Certification Under Rule 23(b)(1)

Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," Fed.R.Civ.P. 23(b)(1)(A), or would "as a practical matter be dispositive the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests," Fed.R.Civ.P. 23(b)(1)(B).

 The plaintiffs argue that certification would be appropriate under Rule 23(b)(1)(A) on the basis that actions by individual plaintiffs might expose the defendant to the risk of incompatible standards of conduct. However, the mere fact that some plaintiffs might win and others might lose in individual actions is not sufficient. *In re Bendectin Products Liability Litig.*, 749 F.2d 300, 305 (6th Cir.1984). Likewise, the possibility that individual actions would have a precedential effect is not enough. *In re Dennis Greenman Securities Litig.*, 829 F.2d 1539, 1545 (11th Cir.1987); *Leer v. Washington Educ. Assoc.*, 172 F.R.D. 439, 451 n. 7

(W.D.Wash.1997)(not sufficient that separate actions would raise the same question of law; separate actions must result in defendant having to choose between incompatible standards of conduct in fulfilling judgments in separate actions); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 158 F.R.D. 681, 687 (D.Kan.1994)(class under Rule 23(b)(1)(A) requires more than possibility of inconsistent judgments or resolutions of identical questions of law.)

 There has been no showing that Honda would be placed in the position of having to employ incompatible standards of conduct if individual discrimination actions were filed in this case. Any monetary damages or injunctive relief awarded in cases filed by individual employees would extend only to those employees. Further, certifying a pattern or practice or disparate impact class under Rule 23(b)(1)(A) would not necessarily shield Honda from future actions brought by individual employees. Even if Honda prevailed on a class action disparate impact or pattern or treatment claim, individual employees would still be able to file actions alleging disparate treatment in their own cases. *Cooper*, 467 U.S. at 880, 104 S.Ct. 2794.

 There is likewise no evidence before the court that certification would be appropriate under Rule 23(b)(1)(B). There is no evidence that any action filed by an individual employee would "as a practical matter be dispositive the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests[.]" This is not a "limited fund" case, where numerous persons make claims against a fund insufficient to satisfy all claims. The court finds that it is not appropriate to certify a class under Rule 23(b)(1).

### B. Certification Under Rule 23(b)(2)

The plaintiffs also contend that a class may be certified in this case under Fed.R.Civ.P. 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole." Actions for class-wide injunctive or declaratory relief "involve uniform group remedies" which may often be awarded "without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir.1998).

▪ Certification of a 23(b)(2) class turns on whether the injunctive and/or declaratory relief sought on behalf of the class predominates relative to any incidental monetary damages requested. *Butler v. Sterling, Inc.*, 210 F.3d 371 (unreported), 2000 WL 353502*6 (6th Cir.2000)(citing *Allison*, 151 F.3d at 410). *See also Lemon v. International Union of Operating Engineers, Local No. 139, AFL–CIO*, 216 F.3d 577, 580–81 (7th Cir.2000)(nonequitable monetary relief may be obtained in a Rule 23(b)(2) class action only if the predominant relief sought is injunctive or declaratory).

▪ In *Allison*, the Fifth Circuit noted that monetary relief "predominates" under Rule 23(b)(2) "when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case." *Allison*, 151 F.3d at 413.[10] The court found that monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief, that is, damages which flow directly from liability to the class as a whole, to which class members are automatically entitled once liability to the class as a whole is established. *Id.* at 415. The court went on to explain:

> [T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way

on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individuals's case; it should neither introduce new and substantial legal or factual issues, not entail complex individualized determinations. Thus, incidental damages, will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

The Seventh Circuit in *Lemon* further discussed the characteristics of a Rule 23(b)(2) class action, as follows:

> By virtue of its requirement that the plaintiffs seek to redress a common injury properly addressed by a class-wide injunctive or declaratory remedy, Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members. A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim.

216 F.3d at 580.

The court in *Allison* was careful to distinguish prior cases which recognized that a class can be certified under Rule 23(b)(2) even where the plaintiffs demand backpay as an equitable remedy. *Allison*, 151 F.3d at 415. However, it is often possible to award backpay by reference to objective standards governing eligibility, even though some inquiry into individual circumstances is necessary. The court in *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 928–29 (9th Cir.1982)

---

10. The Sixth Circuit noted in *Butler*, 2000 WL 353502 *6, that the Supreme Court has expressed serious reservations about the propriety of certifying a 23(b)(2) class when compensatory or punitive damages are in issue due to the lack

of notice to class members or the opportunity for those members to "opt out" of the class action, citing *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 120–21, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994).

further remarked on the distinction between compensatory damages and backpay:

> Unlike back pay, compensatory damages are not subsumed by the traditional equitable concepts of reinstatement and restitution. More importantly, establishing the amount of compensatory damages due each plaintiff is a far more complex and uncertain exercise than the determination of back pay, and greatly complicates the management of the class action.

The Fifth Circuit in *Allison* concluded that compensatory damages, which compensate the plaintiffs for emotional and other intangible injuries, are an individual, not a class-wide, remedy. *Id.* at 417. To be eligible for compensatory damages, a plaintiff must prove that the employer's unlawful actions caused emotional distress, by means of expert or nonexpert testimony; factors unique to the plaintiff, such as the plaintiff's mental or physical symptoms resulting from the employer's conduct, the plaintiff's unusual vulnerability, or the plaintiff's particular economic and emotional sensitivity, may be considered. *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir.1996). This proof necessarily involves an inquiry into the individual circumstances of each plaintiff.

Punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs. *Allison*, 151 F.3d at 417. Thus, punitive damages must be determined after proof of liability to individual plaintiffs, not upon the mere finding of general liability to the class at the first stage, and upon proof of how the discrimination was inflicted on each plaintiff, introducing new and substantial legal and factual issues not capable of computation by reference to objective standards. *Id.* at 418.

In *Hoffman v. Honda of America Mfg., Inc.*, 191 F.R.D. 530 (S.D.Ohio 1999), the court rejected the argument made by the defendant that the certification of a class under Rule 23(b)(2) is always precluded as a matter of law where the plaintiffs seek compensatory and punitive damages. Rather, the court concluded that "relief relates predominantly to money damages when that is the form of relief in which the plaintiffs are primarily interested" and that the court "must make an assessment of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Id.* at 535–36.

This court agrees that there is no language in *Allison* which suggests that the court there intended to adopt a per se rule to the effect that injunctive relief can never predominate under Rule 23(b)(2) where compensatory and punitive damages are sought. A case may arise, for example, where the compensatory and punitive damages sought are so *de minimus* that they are merely incidental to the primary injunctive and declaratory relief sought in the case. On the other hand, Rule 23(b)(2) certainly cannot be read as requiring the court to accept the plaintiffs' ranking in importance of the various forms of relief they seek in the action. *Hoffman* offers no specific standards a court may employ in making an assessment of the relative importance of the remedies sought, but essentially leaves that matter up to the discretion of the court.

While the Fifth Circuit's definition of "predominates" and "incidental" may be more restrictive in terms of what is required for certification under Rule 23(b)(2), those definitions are rationally related to the type of class action which is envisioned under that subsection and provide some guidance for resolving these questions. As the court commented in *Miller v. Hygrade Food Products Corp.*, 198 F.R.D. 638, 642 n. 6 (E.D.Pa.2001), while other decisions, including *Hoffman*, have disagreed with the test in *Allison*, no other court had "created a superior test."

The plaintiffs in the present case seek compensatory and punitive damages and attorney's fees in addition to injunctive and declaratory relief, including back pay. There is no evidence or allegation that each class member was affected in the same manner by the multitude of allegedly discriminatory practices and policies at issue in this case or that they suffered the same damages. Whether each class member is entitled to recover compensatory and punitive damages is a question which will mandate an inquiry into the circumstances of that class member. If the criteria announced in *Allison* are em-

ployed, a class cannot be certified under Rule 23(b)(2) in this case because the compensatory and punitive damages sought by the plaintiffs would not flow automatically from a determination of liability on the part of the defendant to the class as a whole on the disparate impact and pattern or practice claims, and are thus not merely incidental.

However, even employing a broader view of the concept of primacy, the court notes that the compensatory and punitive damages which may be recovered by each individual class member under Title VII in this case are substantial, up to $300,000, and no dollar limit is applicable to their claims under § 1981 and state law. The fact that the plaintiffs have sought what may be significant compensatory and punitive damages in addition to back pay indicates that monetary relief is not merely incidental to their equitable claims. The plaintiffs also seek to include former employees in the class. The fact that injunctive relief would not provide a remedy to these former employees, and that their only remedy would be money damages, is a further indication that the plaintiffs' claims are primarily for money damages. See Zapata, 167 F.R.D. at 162. This court cannot conclude that the claims for monetary relief are merely "incidental," or that the injunctive and declaratory relief sought by the plaintiffs is primary and predominates over the monetary relief sought by the plaintiffs. The court finds that certification under Rule 23(b)(2) would not be appropriate in this case.

## C. Certification Under Rule 23(b)(3)

■ The plaintiffs also contend that a class should be certified under Fed.R.Civ.P. 23(b)(3). This subsection permits certification where a class suit "may nevertheless be convenient and desirable." Amchem Products, 521 U.S. at 615, 117 S.Ct. 2231 (quoting Adv. Comm. Notes). To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the con-

troversy. Id. The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and is "far more demanding" than Rule 23(a)'s commonality requirement. Id. at 623–24, 117 S.Ct. 2231. Where a finding of liability requires separate proof for each plaintiff, liability is not a predominate issue. Mertens v. Abbott Laboratories, 99 F.R.D. 38, 41 (D.N.H.1983). The prevalence of individual questions weighs against a finding of superiority. American Medical Systems, 75 F.3d at 1085.

■ Although certification under this provision is possible where individual damages are high, the procedural device of a Rule 23(b)(3) class action was designed primarily to allow the vindication of rights in cases where the monetary amount at stake would not provide adequate incentive for any individual to bring a solo action. Id. at 617, 117 S.Ct. 2231. The Rule 23(b)(3) class action device was also intended to achieve the economies of time, effort and expense. Sterling, 855 F.2d at 1196.

Plaintiffs "do not necessarily satisfy the requirement that questions of law or fact predominate merely by alleging a pattern or practice claim." Ramirez v. DeCoster, 194 F.R.D. 348, 353 (D.Me.2000). Rule 23(b)(3) treatment is inappropriate where litigation would ultimately "degenerate in practice into multiple lawsuits separately tried." Fed. R.Civ.P. 23(b)(3), Advisory Notes to 1966 Amendments.

■ Here, the plaintiffs have asserted claims for compensatory and punitive damages. In Allison, the court found that such claims would require focusing almost entirely on facts and issues specific to individuals rather than the class as a whole, and that such a class action would degenerate into multiple lawsuits separately tried, so that common issues did not predominate. Allison, 151 F.3d at 419. The court further noted that the predominance of individual-specific damage issues detracted from the superiority of the class action device, particularly since a jury was required to hear the case, which involved over a thousand potential class members spread across two separate facilities, represented by six different

unions, working in seven different departments, alleging discrimination over a twenty-year period. *Id.* The court went on to comment that due to the potentially substantial value of the compensatory and punitive damages claims, up to $300,000 under Title VII, "the 'most compelling rationale for finding superiority in a class action—the existence of a negative value suit,' is missing in this case." *Id.* at 420 (quoting *Castano v. American Tobacco Co.,* 84 F.3d 734, 748 (5th Cir.1996)).

The court also rejected the plaintiffs' suggestion that the first stage of their pattern or practice claim could be certified as a class action under (b)(2) or (b)(3) for trial with the disparate impact claim, while reserving the decision whether to certify the compensatory and punitive damages claims. The court noted that the second stage of a pattern or practice claim is essentially a series of individual lawsuits, stating "we see no legal basis for the district court to certify a class action on the first stage of the plaintiffs' pattern or practice claim when there is no foreseeable likelihood that the claims for compensatory and punitive damages could be certified in the class action sought by the plaintiffs." *Id.* at 421. The court also held that bifurcating selected individual issues for class treatment at a later stage of the case to ensure that the common class issues in the case are predominant in the first stage of the case would eviscerate the predominance requirement of Rule 23(b)(3). *Id.* at 422.

Other courts have declined to certify Rule 23(b)(3) class actions where individual issues concerning each class member's entitlement to monetary damages would predominate. *See, e.g., Ramirez,* 194 F.R.D. at 353 (finding unmanageable class of one thousand members who worked for different durations, in different positions, in different barns or plants, with different supervisors, over course of six to seven years, despite allegations of pattern of discrimination and subjective decision-making).

The instant case involves circumstances similar to those in *Allison.* The plaintiffs seek to certify a class of over eight hundred potential class members, including every African–American who has ever been employed at Honda over a period of time exceeding twenty years. These class members are spread over four separate manufacturing facilities and thirty-nine departments, each with promotion practices and job requirements which varied from department to department and from position to position and over time, and they challenge a multitude of promotion practices and criteria. A calculation of compensatory and punitive damages will require a highly individualized inquiry into the circumstances of each class member to determine if or how he or she was injured by the alleged discriminatory practices and to what extent.

Consideration of the factors set forth in Rule 23(b)(3) also indicates that class certification under (b)(3) is not appropriate. In light of the substantial amount of compensatory and punitive damages potentially recoverable in this case and the diverse circumstances of the absent class members, they have a substantial interest in individually controlling the prosecution of separate actions. *See Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 633 (3d Cir.1996)(plaintiffs have a substantial interest in controlling prosecution of separate actions where large awards are possible). The court is unaware of any other pending litigation concerning the same controversy already commenced by other members of the class. There is no evidence that this court would be the forum of choice of the absent class members, or that it is particularly desirable to concentrate the litigation of the claims in this forum. A similar action against Honda involving a potential class of female employees is pending in the Western Division of the Southern District of Ohio. *See Hoffman, supra.* Further, as noted above, the difficulties likely to be encountered in the management of a class action, considering the diverse circumstances of the class members and the individual inquiries needed to prove compensatory and punitive damages, are considerable.

This case is factually distinguishable from other cases where the Rule 23(b) criteria were found to be satisfied. For example, in *Smith v. Texaco, Inc.,* 88 F.Supp.2d 663, 676, 681 (E.D.Tex.2000), the court certified a class of only two hundred salaried African–American employees whose pay grades, promotions

and evaluations were all determined by the same subjective decision-making processes which remained substantially the same over time, where all employment decisions were made at the defendant's headquarters, and where the plaintiffs were "a much more homogenous group who have suffered similar damages" than those in *Allison*.

## D. Seventh Amendment Concerns

▇ The plaintiffs here have proposed bifurcating the class action into two stages, whereby the issues of liability and the claim for punitive damages would be tried in the first proceeding, and the class claims for compensatory relief would be addressed in the second proceeding.

In *Allison*, the Fifth Circuit addressed the question of whether the certification of a class action might be impacted by the parties' right to a jury trial under the Seventh Amendment. The court, relying on its prior decision in *Castano*, 84 F.3d at 750, held that the Seventh Amendment permits bifurcation of issues to separate juries only when those issues are so distinct and separable that the second jury will not be called upon to consider findings of fact by the first.

The court in *Allison* addressed the feasibility of certifying the disparate impact claim under Rule 23(b)(2) in light of the fact that the plaintiffs were also pursuing a class pattern or practice claim with demands for punitive and compensatory damages which they sought to certify under Rule 23(b)(3). The court noted that, although the right to a jury trial under Title VII extended only to the plaintiffs' pattern or practice claim, "[o]nce the right to a jury trial attaches to a claim, . . . it extends to all factual issues necessary to resolving that claim." *Allison*, 151 F.3d at 423 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). The court went on to state that even though the jury demand did not reach the disparate impact claim or any equitable relief,

> [r]esolution of the disparate impact claim and of equitable remedies must nevertheless take into account the Seventh Amendment. When claims involving both legal and equitable rights are properly joined in

a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before the final court determination of the equitable claims. In this case, both parties have a Seventh Amendment right to have a jury determine all factual issues necessary to establish the plaintiffs' pattern or practice claim, a claim for legal damages that they have properly joined in the same action with a disparate impact claim for equitable relief. As a result, each factual issue common to these claims, if any, must be decided by the jury before the district court considers the merits of the disparate impact claim and whether the plaintiffs are entitled to any equitable relief.

(Citations and footnote omitted). *Id.* at 423–24. The court noted that the same employment policies and practices were challenged under both claims, and that the business necessity defense to the disparate impact claim mirrored the legitimate nondiscriminatory reason defense to the disparate treatment claims. *Id.* at 424. The court concluded that in light of the existence of factual issues common to both the disparate impact and pattern or practice claims, a trial of the disparate impact claim in a class action severed from the remaining nonequitable claims was precluded under the Seventh Amendment. *Id.* at 425.

Several other courts before and after *Allison* have declined to certify bifurcated classes in light of the problems presented by the Seventh Amendment. *See, e.g., Miller*, 198 F.R.D. 638, 644–45 (bifurcation of employment discrimination claims would violate Seventh Amendment); *Burrell v. Crown Central Petroleum, Inc.*, 197 F.R.D. 284, 292 (E.D.Tex.2000)(trying issues of classwide liability and punitive damages in first trial and litigating compensatory damages in subsequent trials would violate Seventh Amendment); *Ramirez*, 194 F.R.D. at 351 (agreeing with *Allison* and holding that where defenses offered by employer to claims for compensatory and punitive damages in remedial stage of pattern or practice case would require jury to re-weigh evidence bearing on liability, certification of class was precluded); *Faulk v.*

*Home Oil Co., Inc.,* 184 F.R.D. 645, 649 (M.D.Ala.1999)(claims for compensatory and punitive damages precluded certification under Rule 23(b), following *Allison*); *McKnight v. Circuit City Stores, Inc.,* 168 F.R.D. 550, 552–53 (E.D.Va.1996)(claims alleging discrimination in promotions and transfers not certified where proposed stages would require multiple juries to reexamine the same issues), *vacated on other grounds sub nom. Lowery v. Circuit City Stores, Inc.,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999).

This court agrees with the reasoning of those courts and concludes that the plaintiffs' proposal for trying the class disparate impact and disparate treatment claims of liability and punitive damages first, then trying the class claims for compensatory damages in a subsequent trial would violate the Seventh Amendment. Since punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs, it would not be feasible to permit one jury to pass on the issue of punitive damages while allowing a subsequent jury or juries to decide each class member's entitlement to compensatory damages without violating the Seventh Amendment. *Allison,* 151 F.3d at 417–18. Even if the issue of punitive damages is deferred to a later stage, the second jury would be required to re-weigh evidence and issues relating to liability determined by the first jury in determining who is entitled to punitive and compensatory damages.

*Allison* indicates that the Seventh Amendment problem would not be solved by certifying a class under Rule 23(b)(2) solely on the disparate impact claim. To do so in this case would present a problem under the Seventh Amendment since many of the neutral promotion criteria forming the basis of the plaintiffs' disparate impact claim, such as the time-in-department requirement and the attendance requirement, are also alleged to have been intentionally manipulated by agents of the defendant as tools of disparate treatment. Thus, much of the evidence relied on to establish class liability in the dispa-

rate impact phase would have to be re-examined by a later jury determining the class pattern or practice disparate treatment claims and the individual class members' entitlement to compensatory and punitive damages. Further, since the same employment policies and practices are being challenged under both the disparate impact and pattern or practice theories, the business necessity defense to the disparate impact claim and the legitimate nondiscriminatory reason defense to the disparate treatment claims will involve common issues and "are not 'so distinct and separable' from one another that they may be considered separately by multiple factfinders without violating the Seventh Amendment." *Id.* at 424 (quoting *Gasoline Prod. Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)).

### E. Fairness and Efficiency

Even if this case did not present a problem under the Seventh Amendment, this court would still conclude that Rule 23(b) class certification is not the most fair and efficient way to litigate the plaintiffs' claims. *See McKnight,* 168 F.R.D. at 553.[11] The litigation of class claims for compensatory and punitive damages in a class action would not result in the accelerated and efficient disposition of the case. Multiple juries would be needed to try the compensatory and punitive damages claims of class members regardless of whether the action proceeds as a class action or as individual actions.

Even if the case were bifurcated, the issues involved in this case of over eight hundred potential class members would be unmanageable. Despite plaintiffs' blanket claims asserting that Honda used a promotion scheme resulting in disparate impact and had a standard operating procedure of discrimination through subjective decision-making, this case would involve primarily individual-specific inquiries. *See Ramirez,* 194 F.R.D. at 353. The class proposed by the plaintiffs, namely, all former and current African–American employees who have worked at Honda since 1977, would involve

---

**11.** The decision of the district court to decertify the class on this basis was affirmed by the Fourth Circuit in *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 757–759 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999).

workers at both the production and managerial levels in thirty-nine different departments, working different jobs in four different plants, with different supervisors using different promotion practices which varied over the years. Even if the proposed class is confined to production associates, this action "will erode into a series of individual trials focusing on issues specific to each worker." *Id.* It would also not promote the interests of judicial economy to bifurcate the disparate impact claim and try it first. Due to the overlap between the disparate impact claim and the class pattern or practice claim, which involve many of the same practices, the same evidence and expert testimony would be relevant to both claims and would have to be presented twice.

Plaintiffs suggest bifurcating the proceedings by trying the liability and punitive damages issues in the first phase and the compensatory damages issues in the second phase. This procedure would require the defendant to litigate the issue of punitive damages before the issue of compensatory damages has been decided. Unfairness to the defendant would result because the jury deciding the issue of punitive damages would not hear evidence concerning the entitlement of each class member to compensatory damages, which is relevant to the plaintiffs' entitlement to punitive damages. *Allison,* 151 F.3d at 417–418; *McKnight,* 168 F.R.D. at 553 (determination of punitive damages in first phase of case unfair to defendant).

Under the bifurcation scheme proposed by the plaintiffs, the defendant would be obligated to put on the same evidence bearing on the defenses of business necessity and legitimate nondiscriminatory reasons both at the liability phase of the trial and at the compensatory damages phase of the trial. This would not only be unfair to the defendant, but also would not serve the interests of judicial economy.

### V. Conclusion

After carefully considering the record and the requirements of Rule 23, the court concludes that the certification of the proposed class is not appropriate, and the plaintiffs' motion for certification of a class with named

plaintiffs Bacon and Harden as class representatives is denied.

It is so ordered.